## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 18-CR-00327 (ABJ) |
| | : | |
| LAWRENCE PAUL SCHMIDT, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing in advance of Defendant Lawrence Paul Schmidt's December 17, 2021 sentencing.   The United States respectfully requests that this Court sentence the Defendant to a term of imprisonment at the top end of the recommended sentencing range under the U.S. Sentencing Guidelines, calculated by the parties and the Probation Office to be a period of 51 months' imprisonment, to be followed by five years of supervised release.   In addition, the United States respectfully requests the imposition of restitution in the amount of $106,775.84, and entry of a forfeiture money judgment in the amount of $106,775.84.   In support of this Memorandum, and to assist the Court in fashioning an appropriate sentence, the government submits the following:

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves a multi-faceted bank fraud scheme that the Defendant both created and carried out using various methods of sophisticated criminal conduct, all the while abusing his position of private trust with the investors of the multiple entities that he used to facilitate the scheme.   The Defendant is a former District of Columbia resident who capitalized on his knowledge and expertise to fraudulently obtain substantial amounts of funds for his own benefit and use, then fled to the United Kingdom via a one-way plane ticket in the days following

execution of his scheme, and while an SEC investigation into him was still underway.   Overall, due to his intentional sophisticated criminal conduct, the Defendant admits that he caused a combined intended loss of approximately $746,844.59 to Bank of America and SunTrust Bank, and an actual loss of approximately $106,775.84.

As the Defendant himself stated, "I know the federal government would like to prosecute me and I cannot blame them." (D.E. 15, at 7).   Indeed, the Defendant did not return to the United States until he was arrested in September 2020, and brought back via extradition in December 2020.   Now, having been indicted, extradited, and pled guilty, it is time for Schmidt to, as he phrased it, "pay the piper" *(Id.)*.   As set forth below, the government respectfully submits that a sentence of 51 months' imprisonment, at the top of the agreed guideline range, would adequately serve the interests of justice as codified in 18 U.S.C. § 3663.

## I.   Sentencing Guidelines

### A.  The Plea Agreement and PSR

By plea agreement, the parties agree that the Defendant's total offense level is 25 and that after application of a three-point reduction for acceptance of responsibility, the Estimated Offense Level is at least 22, resulting in a recommended sentencing range under the U.S. Sentencing Guidelines of 41 to 51 months' imprisonment.   *See* D.E. 14, Plea Agreement ¶ 4(A)-(C).   The PSR similarly calculates the Defendant's adjusted offense level to be 22.   PSR ¶¶ 37-47.

### B.  Guidelines Calculations

Based on the foregoing, the United States submits that the Guidelines calculations are as follows:

Base Offense Level (§ 2B1.1(a)(1))                                7
Specific Offense Characteristic (§ 2B1.1(b)(1)(H))         +14

*Loss between $550,000 and $1,500,000 ($746,844.59)*

| | |
|---|---|
| Role in the Offense – Abuse of Position of Trust (§ 3B1.3) | +2 |
| Sophisticated Means (§ 2B1.1(b)(10)) | +2 |
| | |
| **Combined Adjusted Offense Level** | **25** |
| | |
| Acceptance of Responsibility (§ 3E1.1(a)) | -2 |
| Acceptance of Responsibility (§ 3E1.1(b)) | -1 |
| | |
| **Total Offense Level** | **22** |

### C.  Criminal History and Guidelines Range

As further addressed below, although the Defendant has several criminal convictions, none are temporally close enough to the present offense to give rise to criminal history points.  *See* PSR ¶¶ 49-71.  Accordingly, the Defendant has zero criminal history points, placing him in Criminal History Category I. With a total offense level of 22, as calculated by the PSR, and a Criminal History Category I, the recommended imprisonment range is 41 to 51 months' imprisonment.

## SENTENCING RECOMMENDATION

### The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2).  The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

Per the plea agreement, the parties agree that a sentence within the guidelines range

constitutes a reasonable sentence (D.E. 14, ¶ 5).   Likewise, the PSR has not identified any factors warranting a departure of variance.   PSR ¶¶ 135-136.   Accordingly, the government recommends that the Court sentence the Defendant to a top of the Guidelines sentence as to Count 1, to be followed by five years of supervised release.   Such a sentence is reasonable and appropriate I light of the factors set forth in 18 U.S.C. § 3553(a).

### A.   The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

As the undisputed record makes clear, the Defendant systematically engaged in a sophisticated, multi-pronged and brazen bank fraud scheme that preyed on his knowledge and expertise of the system and abused the trust of investors who trusted the Defendant to handle their most important financial matters.   Moreover, he did so during a time when he knew that the United Securities and Exchange Commission ("SEC") was actively investigating him.

By way of undisputed background, between in or around June 2008 and April 2014, the Defendant, through various corporate entities that he controlled, raised more than $22 million from investors.   PSR ¶ 13.   The Defendant used this money for, amongst other things, his own personal benefit.   *Id.*   The SEC eventually initiated an investigation, during which time it contacted investors, issued subpoenas to the Defendant, and deposed him on November 13, 2013.   PSR ¶ 27.   By in or around January 2014, the bank accounts for the Defendant's various corporate entities contained insufficient funds to meet the companies' financial obligations.   PSR ¶¶ 13-15. As of March 21, 2014, the day before the Defendant made his first duplicate check deposit, the approximate combined balance of the various entities' bank accounts was just $8,600.   PSR ¶ 13.

Being fully aware of the financial situation and the SEC investigation, over the span of just a few months, the Defendant then knowingly and willfully organized and executed these

coordinated and overlapping bank fraud schemes. The Defendant has admitted that his sophisticated criminal conduct abused the trust of his investors and caused an intended loss of approximately $746,844.59 (D.E. 14, at 2). This is a significant loss, and the Defendant's sentence must reflect that.

Indeed, the record of the Defendant's actions before, during, and after these illegal acts reveals that he did not simply suffer a momentary lapse of judgment; he made a conscious decision to devote himself wholeheartedly to a criminal scheme that he devised for his own personal profit, regardless of the negative consequences it would cause for others, then to leave the country via a one-way plane ticket to avoid suffering any negative consequences himself. Accordingly, the sophisticated, blatant, and manipulative nature and circumstances of this offense demand a substantial sentence of incarceration at the top of the Guidelines range.

### B.      The History and Circumstances of the Defendant

The Defendant is a professional financial fraudster who has been undeterred by his own previous encounters with the criminal justice system. Although not relevant when calculating the Defendant's Criminal History Category for the purpose of his estimated sentencing guideline range, it is nonetheless important when understanding the history and circumstances of this Defendant to note that he has an undisputed and extensive criminal history spanning several decades, largely relating to various financial crimes. His first adult criminal conviction was in 1984, at the age of 23, for "Fraud – Insufficient Funds Check," and approximately sixteen additional convictions followed thereafter over the course of more than a decade. PSR ¶¶ 49-65.

As for the Defendant's personal background, he is a 61-year-old white male naturalized U.S. citizen who was born in Lucerne, Switzerland and moved to the United States as a child after

his mother accepted a teaching job as a college professor.   PSR ¶¶ 75, 84.   The Defendant described his childhood as "blessed" and "devoid of any abuse."   PSR ¶ 77.   He has suffered losses in his life, and in 2014, he "abandoned" his wife because he felt like a "failure."   PSR ¶ 82. However, the Defendant owns multiple businesses, holds an associate degree in accounting, has no diagnosed mental health conditions, and does not believe his prior alcohol consumption warrants any substance abuse treatment.   PSR ¶¶ 86, 92-93, 96.   Other than experimenting with marijuana during college, the Defendant also denies using illegal substances and has no history of substance abuse.   PSR ¶ 94.   Amongst other things, the Defendant has worked as a commercial mortgage broker, the owner/operator of a restaurant supply business, the owner/operator of a tax service business, and the president of multiple real estate investment companies, some of which were used in furtherance of the fraud in the instant case.   PSR ¶¶ 101-104.

In short, the Defendant is an educated business owner who had numerous opportunities to earn a living within the bounds of the law, but repeatedly chose not to.   Nothing in the Defendant's history and characteristics suggests any excuse for his criminal activity.

### C.    The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

In bank fraud cases such as this one, a sentence of imprisonment is necessary and appropriate for both specific deterrence and general deterrence, as these are serious offenses that should warrant a significant period of incarceration to promote respect for the law and to deter future criminal conduct of others.   It is critical that the Defendant's sentence inform other would-be bank fraud offenders that there are consequences to committing financial crimes and that those who nonetheless choose to steal from these entities will be met with significant and just consequences.

Further, the Defendant is being sentenced today for fraud in which he sought substantial personal financial gain at the expense of others, and his course of conduct demonstrates a genuine need for specific deterrence.   Indeed, had the Defendant not been caught by the diligent efforts of the FBI and other law enforcement partners, there is little doubt that he would be continuing these same criminal patters to this day.   Moreover, given the nature of the Defendant's scheme, the detection and investigation of his crimes were not simple endeavors.   Substantial federal resources were necessary to identify the scheme, prove the Defendant's crimes, and extradite him back to the United States so he could be held accountable for his actions.

### D.    Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008).   However, the Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

### E.  The Need to Provide Restitution

The Defendant has agreed to restitution in his plea agreement, and the parties agree that

7

the applicable amount is $106,775.84, which reflects the specific actual loss amount caused to

victim Bank of America.[1]   The government has provided a victim payment address to the assigned

Probation Officer.

## CONCLUSION

For the foregoing reasons, the information reflected in the PSR, and the record in this case,

the United States respectfully requests that this Court sentence the Defendant to a period of 51

months' imprisonment, to be followed by five years of supervised release.   In addition, the United

States respectfully requests the imposition of restitution in the amount of $106,775.84, entry of a

preliminary order of forfeiture, and imposition of a forfeiture money judgment in the amount of

$106,775.84.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Anne P. McNamara*
ANNE P. MCNAMARA
D.C. Bar No. 1006550
Assistant United States Attorney
Fraud Section
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C.   20530
Phone: 202-809-3502
Email: Anne.McNamara2@usdoj.gov

---

[1] The parties agree that for purposes of restitution, no actual loss was suffered by victim
SunTrust Bank.

8